## Kerstetter v. Kerstetter

*Metzger & Wickersham,* for plaintiff.
*James E. Snyder* and *Witmer & Rice,* for defendant.

HARGEST, P. J., December 28, 1936.—Plaintiff in this case seeks to have her husband's real estate charged for her maintenance.

### Abstract of pleadings

The bill, which was filed February 17, 1936, avers that plaintiff and defendant were married December 25, 1890, and that defendant deserted her, without reasonable cause, February 9, 1936; that plaintiff had no definite knowledge of the whereabouts of her husband except that it was in the vicinity of Donna, Texas; that she was in destitute circumstances and unable to support herself on account of her age; that her husband is of sufficient ability to provide maintenance for her; that he owns personal property and real estate in this county, the latter yielding a rental income of $72 per month. She asks that defendant be restrained from alienating his real estate; that the court direct the sale or mortgaging thereof under the appointment of a trustee, and for a decree fixing the amount of money she is entitled to receive.

*Abstract of answer*

The answer denies that defendant failed or neglected to provide for plaintiff; avers that plaintiff deserted him on December 1, 1935; that she always knew of his whereabouts; that he went to the State of Texas for his health and she unreasonably refused to accompany him; that he has at all times been ready and willing to support her and frequently asked that she return to their matrimonial home at Elizabethville; that he is desirous of having her return; but he denies that he is able to provide for her separate support at any other place; admits that he receives $72 per month for two properties in Elizabethville, out of which it is necessary to pay taxes, water rent, and insurance.

Testimony was taken from which we find the following

*Facts*

1. Plaintiff and defendant were married February 25, 1890, and since the year 1892 lived as husband and wife in the Borough of Elizabethville, until November 1934, when they went to live with a married daughter in Middletown, this county.

2. While living in Middletown defendant made a trip to Texas and returned with an overwhelming desire to go to Texas to live. He had seen in Texas an establishment consisting of a restaurant, filling station and 12 cabins, which he desired to purchase and operate.

3. On December 1, 1935, plaintiff and defendant had arranged to make a trip back to Elizabethville and the preparation made by defendant for that trip indicated that he intended to go from Elizabethville to Texas. He was insistent that his wife accompany him. She was physically unable to make the trip at that time by automobile and declined to leave Middletown if defendant persisted in making the trip to Texas. Defendant thereupon went to Elizabethville, unaccompanied by plaintiff. On February 8, 1936, plaintiff and her daughter made a

trip to Elizabethville by automobile and found that much of the furnishings had been removed out of their residence and that defendant was arranging to go to Texas the next day.

4. Defendant requested plaintiff to accompany him to Texas and she declined to do so. There was some altercation between them, in which Rev. Paul A. Gottschall attempted to conciliate both parties, and defendant said that he would not go to Texas the next day if Mrs. Kerstetter would come back to Elizabethville, but the married daughter of the parties concluded that in view of the altercation that had taken place it was not advisable for her mother immediately to return. Thereupon he refused to give his wife any money or the keys to the house, and declared that he was going to Texas, and "I have somebody to stick to me and stick by me".

5. During the period from December 1, 1935, when defendant left Middletown, until he left for Texas, he was living in Elizabethville, and Mrs. Laudenschlager kept house for him for, at least, part of the time.

6. On February 9, 1936, he left for Texas in his automobile, taking with him Mrs. Laudenschlager and her son. He said he took the son along so it would not look suspicious.

7. Between the time he left Middletown and the time he went to Texas his daughter and plaintiff importuned defendant to return to Middletown and not go to Texas.

8. On February 1, 1936, Dr. H. W. George, of Middletown, examined plaintiff and determined that she was not in a physical condition to travel by automobile at that time.

9. Shortly after defendant arrived in Texas he wrote his wife a letter, dated February 20, 1936, stating what he would do with reference to the money which he owed her, directing her to take her goods out of the house, saying that he would sell "all personal town lots, cemetery plot, camping stock. Then if you release me for good I will give you the money for the two notes you entered

against me. When the depression is over I will sell all properties to pay your $3,000", saying, also, that he had sent the keys to I. S. Daniel, and that "I do more than the law would ask of me. . . . Show letter to attorney," and, "so we may meet some happy day in a better world." He also sent a postcard to Mr. and Mrs. Samuel Hoffman, Halifax, Pa., signed "The G. M. Kerstetters."

10. Defendant returned from Texas March 9, 1936, taking Mrs. Laudenschlager to Michigan on the way, and has been living in Elizabethville since that time.

11. Susequent to his return he invited his wife to come back and live with him in Elizabethville, but made no real effort to effect a reconciliation.

12. Defendant wanted to sell his property in Elizabethville even to the extent of sacrificing it to raise money to purchase the property in Texas.

13. Defendant's property in Elizabethville is worth approximately $9,000, against which there is a mortgage of $3,000 due his wife, which does not bear interest and by its terms is not collectible during defendant's lifetime. Defendant also has received other large sums of money from his wife, perhaps aggregating $5,000, for which she has no evidences of indebtedness. The other indebtedness against the property amounts to approximately $2,700. The gross income is $81 per month, or $972 a year, against which there are taxes of $170, $40 for insurance, and $162 interest, about $200 for repairs, making the present net income from the property about $33.33 per month.

14. One of defendant's tenants, the American Stores Company, has refrained from paying the rent due, $30 per month, since the first day of March 1936.

15. Defendant deserted and abandoned his wife.

### Discussion

Defendant contends that the court has no jurisdiction to maintain this bill and enter the decree requested, first, because there is an adequate remedy at law, second, be-

cause the evidence does not bring the case within the provisions of the act of assembly providing for a proceeding of this kind, and, third, because there was no desertion.

This bill is brought under sections 1 and 2 of the Act of May 23, 1907, P. L. 227, section 2 being amended by the Act of July 21, 1913, P. L. 867, 48 PS secs. 131, 132. The statute provides, in part, as follows:

"That if any man shall separate himself from his wife, without reasonable cause, and, being of sufficient ability, shall neglect or refuse to provide suitable maintenance for his said wife, such wife shall be, and is hereby, empowered to bring her action at law or in equity against such husband for maintenance, in the court of common pleas of the county where the desertion occurred, or where she is domiciled, and the said court shall have power to entertain a bill in equity in such action, and shall make and enforce such orders and decrees as the equities of the case demand."

The second section provides that where the husband has deserted without reasonable cause "or whose whereabouts are unknown" the proceeding may be had "against any property, real or personal, of said husband, necessary for the suitable maintenance of the said wife; and the court may direct a seizure and sale, or mortgage, of sufficient of such estate as will provide the necessary funds for such maintenance". It provides for service as provided by the Act of April 6, 1859, P. L. 387, relating to service in equity on defendants not found within the jurisdiction of the court. It is apparent, therefore, that the objection that there is an adequate remedy at law cannot apply to a case like this because the legislature has specifically given jurisdiction both in equity and at law. Moreover, there is no adequate remedy at law. The Act of July 12, 1919, P. L. 939, making it a misdemeanor for a husband to desert or neglect to support his wife, provides a criminal offense punishable by fine or imprisonment. The Act of May 10, 1921, P. L. 434, provides for execution against any property of a husband to enforce

an order or decree, but under that act there has to be a criminal proceeding which results in an order of maintenance and then execution. The proceeding in equity is much more satisfactory and elastic and allows the court to mold the order to suit the case in the way that an order for execution could not provide. In Jarrett v. Jarrett, 30 Lack. Jur. 199, it is held that a bill in equity to enforce a husband's duty of maintenance is not open to the objection of an adequate remedy at law by penal proceedings in the quarter sessions. It is there said:

"It is not to be supposed that this jurisdiction was conferred at the risk of being denied at the hands of the court in case there should be some form of relief at law."

We quite agree with this conclusion.

2. We also find that the evidence brings the case within the provisions of the act.

The fact that plaintiff knew that defendant was in Texas, or even in the neighborhood of Donna, Texas, is not sufficient to oust the jurisdiction of the court in this proceeding in equity. Neither is the fact that defendant has returned a good reason for dismissing the proceeding. The statute gives jurisdiction whenever a man separates himself from his wife without reasonable cause, "or whose whereabouts are unknown," and has neglected and refused to provide suitable maintenance for her. This statute provides for two proceedings, one in personam, where defendant is within the jurisdiction, and one in rem, where defendant is without the jurisdiction, and provides for service in such case under the Act of April 6, 1859, supra: Erdner v. Erdner, 234 Pa. 500; Thomas v. Thomas et al., 112 Pa. Superior Ct. 578. We cannot follow the case of Reed v. Reed et al., 30 Dist. R. 373, in which it is held that the Acts of 1907 and 1913 do not apply, if defendant and his property are within the jurisdiction of the court. Nor can we follow Riebrich v. Riebrich, 23 Dist. R. 1001, to the effect that the statute applies to a proceeding in rem only when the whereabouts

of the husband are unknown. As said in McIntyre v. McIntyre, 30 Dist. R. 993, 998:

"This construction is accomplished by saying that the word 'or' therein means 'and', and is supposed to improve the English of the enactment. We are unable to adopt this construction. We are not concerned with the grammatical correctness of the language used, but with the intention of the legislature, and it seems clear to us that this was to broaden the case where the remedy *in rem* was conferred so as to make it apply to all cases covered by the act."

Defendant left his home February 9, 1936. This bill was filed February 17th. If there was jurisdiction in the court to entertain the bill at the time it was filed defendant's return to this county would not oust that jurisdiction. Moreover, as we construe the statute, this being a proceeding against defendant's real estate, it could have been brought whether he was within this county or not. We have no difficulty, therefore, in coming to the conclusion that the case is brought within the provisions of the Acts of 1907 and 1913.

3. The question of desertion is somewhat more difficult. Desertion necessarily has two elements, one of intention, the other of action. The intention need not be formed before the action. It may be formed afterwards. A man may not intend to desert his wife when he leaves her but may subsequently form that intention and act upon it. In the instant case there was originally no intention on the part of defendant to desert his wife. He had an insatiable desire to go to Texas and he intended to go whether his wife went or not. He asked her to go. She was physically unfit, not only to make the trip, according to the certificate of the doctor, but perhaps to do the work which would have been imposed upon her in running a gasoline station and tourist camp. She having refused to go, and we think justifiably so, he then arranged to take another woman with him. The evidence shows that he

was rather closely associated with Mrs. Laudenschlager. He visited her in Gratz because she was lonely, and when he left he said he was going to take somebody that would stick to him. She did, to the extent of going with him to Texas and leaving Texas with him to come back to her sister's home in Michigan. He motored to Texas, leaving February 9th, and he lost little time in writing to his wife, February 20th, that he wanted her to take her clothes out of the house, that he was sending the keys to I. S. Daniel, that he would give her the money for the two notes entered against him if she would release him "for good", and when the depression was over he would sell his property and pay her the $3,000 for which she held a mortgage. He recalled to her some of the incidents of parting for which perhaps she was to some extent blamable, and then he said:

"I shall try to forgive all, only repent and do not worry any more. So we may meet some happy day in a better world." There was no suggestion of repentance on his part, but there was a very distinct suggestion that he did not expect to meet her in this world. We think this letter shows a very definite intention to desert his wife whom he had already left.

Defendant urgently insists that his wife was guilty of desertion when she refused to leave Middletown and go back with him to Elizabethville. There would be great force in this suggestion if he had intended to return to Elizabethville to live. But that was not his intention. He wanted her to go to Elizabethville only as preparatory to subsequently going to Texas.

These people having lived together from 1890 to 1936, it is unfortunate that they cannot live together for the rest of their lives. The physical abuse to which the wife was subjected was not of recent origin, but the indignities to which he subjected her in the matter of leaving and of writing this letter, were. When he returned he made a very feeble effort to have her return to him, an effort which we think was entirely out of proportion to

the injury which he had done her. In our opinion there is not sufficient evidence to hold her guilty of desertion because she did not respond to that feeble effort and resume marital relations: Mallory's Estate, 300 Pa. 217; MacDonald v. MacDonald, 108 Pa. Superior Ct. 80. It is the right of a husband to determine the place of abode, but that right is not to be arbitrarily exercised. He must have due regard for the comfort, welfare, health and peace of mind of his wife: Rood v. Rood, 117 Pa. Superior Ct. 291.

The bill in this case asks us to restrain defendant from alienating any of his real estate, and to direct its seizure, as well as the seizure of personal property, and that we appoint a trustee for defendant for the mortgaging or sale of the real estate owned by him in Dauphin County; that we make a decree fixing the amount which defendant shall pay for past and future maintenance. We find ourselves confronted with serious difficulty in attempting to mold a decree to fit the equities of this case. Both of these parties are advanced in years and perhaps neither of them able to work sufficiently to earn a livelihood. Defendant's real estate is worth only $9,000, against which he has $5,700 indebtedness, and of this indebtedness $3,000 is represented by a mortgage in favor of his wife, payable at his death upon which no interest is payable. Our first difficulty, therefore, is the question of the mortgage. We cannot reform it. The wife took this mortgage without interest and payable at her husband's death and we are without power to enforce its payment now. On the other hand, she is without any return from the mortgage itself. Defendant has an equity in the property over and above the mortgage and the other indebtedness of approximately $3,300. To require a sale of that property at this time might destroy a large part of defendant's equity. The yearly gross income is $972. The annual expenses which defendant has shown are $572, leaving a net income to him of $400, or $33.33 per month, which is hardly adequate to support either one of the parties,

certainly not both. It appears that one of the tenants of his property, the American Stores Company, which is required to pay $30 a month, has not paid any rent, because of the pendency of this proceeding, for a period of nine months, and it also appears from the statements in open court that defendant has been unable to pay his current taxes. Under all the circumstances we are of opinion that we cannot encumber defendant's property any further in this proceeding for the maintenance of his wife. However, we direct him to pay out of the $270 due from the American Stores Company the sum of $70 to his wife, and we direct that from and after the first of January, 1937, he shall pay the sum of $16 a month to his wife for her support and maintenance.

### Conclusions of law

1. This proceeding was properly brought in equity, and the court has jurisdiction to make proper decree.

2. Defendant separated himself from his wife without reasonable cause and has since refused adequately to maintain her.

3. Defendant's conduct has brought him within the meaning of the Acts of May 23, 1907, P. L. 227, and July 21, 1913, P. L. 867, conferring jurisdiction in equity on this court.

4. The subsequent return of defendant after the equitable jurisdiction attached does not oust the jurisdiction of the court.

5. Under the circumstances of the case no charge in a lump sum upon the real estate should be decreed but only an order of maintenance.

### Decree nisi

The prothonotary is hereby directed to enter the following decree nisi:

Now, December 28, 1936, defendant is hereby directed to pay his wife the sum of $70 out of the rent due him from the American Stores Company and, beginning on

the first day of January 1937, the sum of $16 per month for her support, and to pay the costs of this proceeding.